Nial Sherwood Williams

P.O. Box 190353

Anchorage, Alaska 99519


(907) 215-0975

RECEIVED

AUG 10 2023

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

Nial Sherwood Williams

(Plaintiff)

COMPLAINT UNDER

THE CIVIL RIGHTS ACT

42 U.S.C. SECTION 1983

(NON-PRISONERS)

3:23-CV-00180-JMK

Christopher Constant

Thomas Bruce

Michael C. Carpenter

Kenneth B. Bushue

Damon J. Jackson

Anchorage Police Department

Chief Kenneth McCoy

Municipality of Anchorage

Suzanne LaFrance

## A. Jurisdiction

Jurisdiction is invoked under 28 U.S.C. Section 1343(a)(3) and 28 U.S.C. Section 1983. If you assert jurisdiction under any different or additional authorities please list them below.

Notice was given to parties pursuant to state law and no efforts were made to remedy the civil rights infringements contained herein.

Here comes Plaintiff before Court.

## B. Parties

1. Plaintiff: This complaint alleges that the civil rights of Nial Sherwood Williams who presently resides at: P.O. Box 190353. Anchorage, Alaska 99519. were violated by the actions of the individuals named below.
2. Defendants

Defendant No. 1 Christopher Constant is a citizen of the United States of America and is employed as an Anchorage Assembly Member

The Defendant **personally participated** in causing my injury, and I want **money damages and injunctive relief.**

Defendant No. 2 Thomas Bruce is a citizen of the United States of America and is employed as an Securitas Officer

The Defendant **personally participated** in causing my injury, and I want **money damages and injunctive relief.**

Defendant No. 3 Michael C. Carpenter is a citizen of the United States of America and is employed as an Anchorage Police Officer

The Defendant **personally participated** in causing my injury, and I want **money damages and injunctive relief.**

Defendant No. 4 Kenneth B. Bushue is a citizen of the United States of America and is employed as an Anchorage Police Officer

The Defendant **personally participated** in causing my injury, and I want **money damages and injunctive relief.**

Defendant No. 5 Damon J. Jackson is a citizen of the United States of America and is employed as an Anchorage Police Officer

The Defendant **personally participated** in causing my injury, and I want **money damages and injunctive relief.**

Defendant No. 6 Anchorage Police Department is an entity of the United States of America and is employed as an Anchorage Police Officer

The Defendant **personally participated** in causing my injury, and I want **money damages and injunctive relief.**

Defendant No. 7 Chief Kenneth McCoy is a citizen of the United States of America and is employed as an Anchorage Police Officer

The Defendant **personally participated** in causing my injury, and I want **money damages and injunctive relief.** NSW

Defendant No. 8 Municipality of Anchorage is a corporation of the United States of America.

The Defendant **personally participated** in causing my injury, and I want **money damages and injunctive relief.** NSW

Defendant No. 9 Suzanne LaFrance is a citizen of the United States of America and is employed as an Anchorage Assembly Member

The Defendant **personally participated** in causing my injury, and I want **money damages and injunctive relief.**

**Claim 1:** On or about August 10, 2021 my civil right to freedom of religion was violated by Christopher Constant. Nial Sherwood Williams, (Plaintiff), was at the Loussac Library Assembly Chambers on Denali Street in Anchorage Alaska on this day. A scheduled Assembly meeting for 5:00 P.M. was scheduled for this day. Prior to the meetings official start both Assembly members, staff, security personnel, library staff, as well as members of the general public are permitted to be in this space and at this time. Prior to Assembly meetings members of the public wishing to redress their grievances with local government by speaking in person during initial audience participation are required to line up in front of the podium in order to keep their spot in line. It is on a first come first served basis and sometimes not all members of the public wishing to voice their grievances will have the time to be heard by their elected officials.

On the date of August 10, 2021 Plaintiff was assembled in front of the podium as the first in line. Plaintiff was standing reading verses from the King James Version of the Holy Bible aloud while praying for members of the Assembly and the community. During this time the Plaintiff was also raising his hands open and up in the air towards the assembly dais. Not moving his body physically towards the dais but raising his hands in an effort to be a conduit for the Holy Spirit to bless the room and the people in it on that day. After some time of the Plaintiff being in this traditional public forum exercising his Christian duty of prayer Christopher Constant told Plaintiff to stop and that he had to sit down. As Plaintiff felt he had the right to be there in that place and at that time and certainly the right to pray to God in his own way. Plaintiff did not sit down right away but continued to pray silently in his head for Defendant No. 1. Defendant No. 1 at that time employed the all too familiar tactic of threatening a member of the public with trespass if they did not leave. This tactic was usually employed as a method of silencing dissent of your political opponents or speech that is not liked. Plaintiff was threatened with trespass and at which point Plaintiff sat down and called Anchorage Police Department for assistance with vindicating his rights. Plaintiff had come to assemble in a public place, exercise his religion freely while in this public space, to be able to speak freely and to be able to redress his government all at once. Plaintiff understood at the time that there were statutes on the books Alaska Statute 8.76.110 - Interference with Constitutional Rights, to be a misdimeanor and so Plaintiff sought help from other personnel to be able to exercise his constitutional rights. At this same time Defendant No. 1 sent a Securitas guard over to tell Plaintiff to leave.

Claim 2: On the date of August 10, 2021 my civil right to free speech was violated by Thomas Bruce, (Defendant 2) . Defendant 2 is a Securitas guard whose own organization trains their employees in their own handbook to be able to recognize and defend those rights enumerated in the United Nations Declaration of Human Rights. Defendant No. 2 knew or should have known that Plaintiff had a right to be there and redress his government and that none of the Plaintiff's behavior that day warranted having Plaintiff arrested in order to remove him. Thomas Bruce told Plaintiff to stop praying and raising his hand towards the dais as it was, "making others uncomfortable," that day. Plaintiff felt that the prayer was working as it was creating a stirring of the Holy Spirit in others hearts hopefully to change their actions and decision making in our great city.

It is also believed but not known for certain at this time that Defendant No. 2 instructed another member of his security team, as he was the acting security supervisor that day, to call the police as well. So it is unknown whether police actually responded to Unnamed Secutitas Personnel No 1 phoning 911, or whether it was in response to the Plaintiff's call for assistance with exercising his constitutional rights. However the police reports state that Thomas Bruce 911 call was received 1 minute prior to the Plaintiff's.

Claim 3: On the date of August 10, 2021 my civil right to free assembly was violated by Michael C. Carpenter, (Defendant 3) . Three police officers responded to the Loussac Library Assembly Chambers that day. Defendant 3 was the arresting officer and thus is why he is named first. Defendant 3 arrived to find, according to his own police report to find the Plaintiff holding a Bible in his lap and sitting in a chair quietly. Defendant 3 first words to the Plaintiff was 'alright

let's go outside Nial' or something to that effect. Plaintiff told Defendant 3 that he was not leaving and that his rights guaranteed under the First Amendment to the United States Constitution were being violated. In Defendant 3 police report it also references speaking with Jamie Allard, a then Anchorage Assembly member, and now State Legislator in Juneau, Alaska representing Eagle River- Chugiak, stated to him at the time, "Nial did nothing wrong you guys need to let him go." She also told Plaintiff prior to that to "Shut Up," before she spoke those words being a voice of reason to the insanity of trying to arrest someone for simply exercising their freedoms guaranteed under the First Amendment. Mrs. Jamie Allard understood her oath to the United States Constitution and her duty to protect and safeguard those freedoms for not only herself but particularly the people she served. Sadly Anchorage Police Department Officer Carpenter did not share those same understandings of the oath he took.

Defendant No 3 had not interest in hearing any voices of dissent that would be strong enough to overcome the order he had been given, 'Arrest Nial Sherwood Williams no matter what.' This became clear to the Plaintiff after some discovery produced by the Municipality of Anchorage Prosecutor's Office during his malicious prosecution of over 8 months by the city. In this discovery was contained call logs for Anchorage Police Department which show that at least 11 officers from Anchorage Police Department had been following the Plaintiff's every movement from as early as 11:33 A.M. on August 10, 2021 right up until the Plaintiff's arrival at the Loussac Library for the scheduled meeting at 5:00 P.M. that day. These 10 officers were comprised in 3 groups. The first group lists Officers Eric Novak, Taylor Webster, Jarod Hager Pyle, Gerard D. Asselin, Jeremiah L Fristche. The second group lists officers Henry P. Shaun,

and Kenneth Anglin. The third group lists Officers Steven Amnatkeolee, George Noga, Devin Morley, and Jeremiah L. Firstsche (named again).

Those 10 officers were following the Plaintiff around because that day Plaintiff also went to the Mayor's office in order to seek redress for grievances of not being granted an in person meeting. Officers subsequently harassed and followed the Plaintiff for the remainder of the day up to and including his false arrest.

Based on his own observations of the peacefulness of the Plaintiff that day and also his knowledge and training regarding Constitutional rights Defendant 3 should have known that there was no lawful reason whatsoever to be able to arrest the Plaintiff given the circumstances of the case however without a shred of evidence to support his claim for disorderly conduct - loud noise public place AMC 8.30.120(A)(2) and trespass - enter or remain requested to leave AMC 8.45.010(A)(3)(a).

Defendant 3 obviously lacks in the required deescalation skills and so therefore when facing a non-compliant human being such as the Plaintiff who was willing to stand on his rights he resorted to physical violence by placing his hands on another person when he could not achieve his goals with words. Defendant 3 with the help of other officer Jackson, and supervisor Bushue did place hands on the defendant seizing his person, papers, and effects without just cause and without a warrant for a misdemeanor crime that was only alleged to have occurred outside of his presence. Defendant 3 was informed that by making the arrest that he would be violating Plaintiff's civil rights guaranteed under the First Amendment to the United States Constitution.

Defendant 3 being the arresting officer then transported Plaintiff in back of patrol car to an adjacent parking lot kidnapping Plaintiff. Plaintiff was held in the police car in a USPS parking lot adjacent to the Loussac Library at least until 7:46 P.M. that night according to police records.

Claim 4: On the date of August 10, 2021 my civil right to unreasonable search and seizure was violated by Kenneth B. Bushue, (Defendant 4) . Defendant 4 responded with both Carpenter, (Defendant 5), and was the supervising officer on the call that day. Defendant 4 was the one who made the ultimate call that day based on the training he had been given to violate the defendants right to be secure in his person, houses, papers and effects. Defendant 4 will say that he was just following orders that day and there was nothing he could do once Christopher Constant says someone has to go, they either leave or they are arrested. Defendant 4 came to the Library that day with the full intention of arresting Plaintiff as many resources, now 13 cops had been deployed to deal with one person who chooses to speak out against local government. Plaintiff was seized by Defendant 4 "grabbing Nial's right wrist" as is written in his police report from that day. At this moment not only was the defendant detained but felt as though he was already under arrest at this time because they had used physical force. Plaintiff continued to voice his displeasure with the decision and informed Defendant 4 that he was violating Plaintiff's right as guaranteed under the First Amendment to the Constitution.

By the logic of Defendant 4 all that is needed to all together stop someone from exercising their First Amendment rights is someone asking them to stop. If this were in fact the case then is the First Amendment really contain 5 fundamental rights to: religion, speech, assembly, press, petition or not? All that is needed is someone be offended and the rights that our forefather's

fought and bled for are gone. This is not the America that the Plaintiff grew up in, or the America that is cherished by the hearts of many. Rights are either inalienable or they are not. If someone didn't like someone wearing a burkha could they then be asked to leave. How about if someone was reading from the Torah that day, then could they be asked to leave?

Defendant 4 failed to uphold his oath that day to the United States Constitution and committed a false arrest and search and seized the Plaintiff and his property and papers and effects without a warrant. Defendant 4 never read Plaintiff his Miranda rights. Defendant 4 had a higher duty to intervene to uphold Plaintiff's obvious civil rights which were being violated.

Claim 5: On the date of August 10, 2021 my civil right to free exercise of religion was violated by Damon J. Jackson (Defendant 5). Defendant 5 in the course of Plaintiff's false arrest did make physical contact with the defendant and did assist in the employment of physical restraints on Plaintiff's hands. Defendant 5 seized Plaintiff's Bible in the course of the arrest. Plaintiff later received Bible back. Defendant 5 also heard Jamie Allard, current state legislator, then Assembly member for Anchorage state, "Nial did nothing wrong and you need to let him go." Despite the situation that Defendant 5 saw when he arrived, which according to the police report was that Plaintiff was sitting in a chair quietly and with a Bible in his lap shows that not a shred of probable cause or even reasonable suspicion existed for arresting the Plaintiff. Defendant 5 had a duty to uphold his oath the United States Constitution and he failed to do so that day arresting Plaintiff for lawfully protected free exercise of religion. Saying a prayer and raising one's hands inside of a traditional public forum in order to have Christ Jesus bless the room and its inhabitants is lawfully protected under the First Amendment still in 2021 in America, is it not?

Claim 6: On the date of August 10, 2021 my civil right to free assembly was violated by Anchorage Police Department, (Defendant 6) . Anchorage Police Department in the time of 2021 had not established proper protocols for training officers how to successfully support and defend the Constitution. I, insert police officer name, do swear to uphold and defend the Constitution of the State of Alaska, the Constitution of the United States of America and to perform the duties of a police officer to the best of my abilities. This is more or less the oath that all officers must swear in order to put on that badge. First and foremost law enforcement officers must not trample citizen rights and in their duties as a public safety officer they must be a voice of reason to defend those rights. Anchorage Police Department did not properly train and supervise its employees and created a culture that tramples the rights of citizens. Instead of when a police officer sees someone's civil rights being violated and sticking up for what is right and defending that right, they act as mere enforcers for the whims of a tyrant. With proper training of officers this entire situation could have been avoided.

When Plaintiff sought to redress his grievances with the above listed officers instead of those Internal Affairs complaints being routed to an independent third party for review, they were reviewed initially by Defendant 4 peer, another supervisor in the Community Action Policing of equal rank at the time, to review the file. Then after Plaintiff found this out it was handled by Lieutenant Luis Soto who posed on the telephone multiple times claiming to be from Internal Affairs when in fact he was the supervisor of Defendant 4. He of course found no wrongdoing whatsoever. Soto also posed as a law enforcement officer and rank which he was not in his discussions with the Plaintiff by hiding the fact that he would of course have a conflict of interest

and a difficult time looking at things through fresh eyes. The temptation to cover the tracks of your subordinates is too great in this modern world. Defendant 6 often finds it easier to sweep wrong doing under the rug, than actually identifying problem behaviors in policing and providing corrective action to the parties who need it, and firing those who cannot properly defend those sacred constitutional right.

Claim 7: On the date of August 10, 2021 and the dates after the initial encounter, my civil right to petition my government for a redress of grievances was violated by Chief Kenneth McCoy, (Defendant 7) . Defendant 7 was the Chief of the Anchorage Police Department at the time of the incident. Defendant 7 failed to properly train and supervise his officers. He failed to provide adequate training on the protections and safeguards of the First Amendment to the United States Constitution. Defendant 7 refused to provide any public corrective action to the other officers named in this report, And when Plaintiff brought matters to his attention via email, online complaints, written complaints, and telephone calls, Plaintiff was and has been met with radio silence from Defendant 7. Defendant 7 also seemed unconcerned about the lack of transparency and the apparent impersonation of an Internal Affairs officer in the Anchorage Police Department by Luis Soto.

Claim 8: On the date of August 10, 2021 my civil right to free speech was violated by Municipality of Anchorage, (Defendant 8) . The Municipality of Anchorage as a corporation is implicated in violating my rights to petition my government for a redress of grievances, free speech, free religion, and free assembly at a minimum for the events surrounding August 10,

2021. The creation of policies that allow for members of the public to be censored by the mere say so of an Assembly member is just way too broad. Plaintiff had been and was censored for content based speech by the Municipality of Anchorage and its Assembly members.

In order to silence the opposition of your political opponents just ask them to leave, if they refuse trespass them. This type of mentality not only widens the gap between the average person and local government but it can and all too often it is used to silence speech that is not liked. However history has taught us that the speech we do not like must be protected with even more fervor.

The Municipality of Anchorage also engaged in a malicious prosecution that lasted until charges were finally dropped April 12, 2022. This was 7 months after Plaintiff's motion to dismiss charges on First Amendment grounds, which was opposed by the Anchorage Municipal Prosecutor's office.

Claim 9: On the date of August 10, 2021 my civil right to a speedy and fair trial was violated by Suzanne Lafrance, (Defendant 9) . Suzanne LaFrance at the beginning of the televised and archived meeting that day did actually disparage the Plaintiff by stating that "he created an actual disturbance and continued to create a disturbance and refused to leave. Then he had to be arrested by Anchorage Police." This was also broadcast on the nightly news on KTUU. It was subsequently reprinted in Alaska Public Media, and Anchorage Daily News, as well as State Senator Matt Claman's official legislative website. These attacks on Plaintiff's character are knowingly and willingly wrong and without any basis in fact. They were said with actual malice and forethought and to damage Plaintiff's reputation.

Defendant 9 did actual damage Plaintiff by him losing his job at Bear Paw the very next day, because management, "Didn't need the headache" of having a political activist or someone who got in trouble on their staff. Management had seen Plaintiff on news and fired him the next day. Finding a job was not any easier with Plaintiff's name being in Alaska Courtview either. Plaintiff jury pool was also tainted by the malicious statements of Defendant 9.

**F. Request for Relief**

Plaintiff requests that this Court grant the following relief:

1. Damages in the amount of $210,000

2. Punitive Damages in the Amount of $1,290,000

3. An order requiring defendant(s) to

    1. Fund and provide Constitutional rights training to both the Assembly and Police Department to be performed by a constitutional law expert

    2. Establish a Civilian Police Review Board with Subpoena power

    3. To pay for a month long advertisement on KTUU, Anchorage Daily News, and Alaska Public media those outlets which ran false information about Plaintiff and his arrest to state Plaintiff's rights being vindicated and apologizing for defaming Plaintiff's character.

Plaintiff Demands Trial By Jury. YES. **X**

DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the about action, that has read the above civil rights complaint and that the information contained in the complaint is true and correct.

Executed at _____Anchorage, Alaska_____ on
(Location)

_August 10, 2023_
(Date)

_____/s/ Nial Sherwood Williams_____
(Plaintiff's Original Signature)   Nial Sherwood Williams

Pro Se

P.O. Box 190353

Anchorage, Alaska 99519

(907) 215-0975