# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

NIAL WILLIAMS,

                Plaintiff,

        v.

CONSTANT, *et al.*,

                Defendants.

Case No. 3:23-cv-00180-JMK

## **SCREENING ORDER**

On August 10, 2023, self-represented litigant Nial Williams ("Plaintiff") filed a complaint, civil cover sheet, and an application to proceed without paying the filing fee.[1] Plaintiff names the Municipality of Anchorage, the Anchorage Police Department, two assembly members, four police officers, and one private security guard as Defendants. Plaintiff's claims concern his alleged efforts to speak at an assembly meeting on August 10, 2021. He alleges he was prevented from reading aloud from his Bible and praying, asked to leave the meeting, then arrested in violation of the First and Fourth Amendments to the U.S. Constitution. Plaintiff also brings several miscellaneous claims.[2] For relief, Plaintiff seeks damages in the amount of $210,000; Punitive Damages in the Amount of $1,290,000; an order requiring constitutional rights training be provided to both the assembly and the

---

[1] Dockets 1–3.

[2] Docket 1.

police department by a constitutional law expert; establishment of a Civilian Police Review Board with subpoena power; and a month-long advertisement on several news channels apologizing for defamation of Plaintiff's character.[3]

Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of the docket records of the Alaska Trial Courts.[4]  Plaintiff claims he was arrested at the meeting on August 10, 2021, and the charges were dropped on April 12, 2022.[5]  However, a search of the publicly available state court records did not produce an arrest in August 2021.[6]  The state records search did produce several minor traffic offenses,[7] and a criminal case that was filed on December 9, 2020.[8]  According to the docket, Plaintiff was convicted of trespassing in that case.[9]  Assuming the truth of the facts contained in the Complaint, the Court proceeds based on his allegations that he was arrested in August 2021.  However, the Court notes that claims brought based on events occurring in December 2020 would be

---

[3] Docket 1 at 14.

[4] See *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("we may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal citations and quotation marks omitted).

[5] Assembly Meeting Docket 1 at 13.

[6] The docket records of the Alaska Trial Courts and the Alaska Appellate Courts, which may be accessed online at https://courts.alaska.gov/main/search-cases.htm.

[7] *Municipality of Anchorage vs. Williams,* Case Nos. 3AN-21-08413MO, 3AN-22-00787MO, 3AN-23-10213MO, and 3AN-23-10214MO.

[8] *Municipality of Anchorage vs. Williams,* Case No. 3AN-20-09558CR.

[9] Plaintiff originally was charged with AMC 8.45.010(A)(2)(d) but convicted under AMC 8.45.010(A)(3)(b) after a no contest plea.  *Id.*

Case No. 3:23-cv-00180-JMK, *Williams v. Constant, et al.*
Screening Order
Page 2 of 24

time-barred by the statute of limitations.[10]  If a claim is not filed within the applicable statute of limitations, dismissal is proper even if the plaintiff is self-represented.

The Court has now screened Plaintiff's Complaint in accordance with 28 U.S.C. §§ 1915(e) and 1915A.  Read as a whole and liberally construed, Plaintiff's Complaint fails to state a claim for violation of his civil rights.  Therefore, the Complaint is DISMISSED.  However, Plaintiff is accorded **60 days** to file an amended complaint in accordance with the guidance herein.

## SCREENING STANDARD

Federal law requires a court to conduct an initial screening of a civil complaint filed by a self-represented litigant seeking to proceed in a lawsuit in federal court without paying the filing fee.[11]  In this screening, a court shall dismiss the case at any time if the court determines that the action:

(i)  is frivolous or malicious;

(ii)  fails to state a claim on which relief may be granted; or

(iii)  seeks monetary relief against a defendant who is immune from such relief.[12]

---

[10] Alaska's statute of limitations for personal injury claims is two years.  Alaska Stat. § 09.10.070. *See Butler v. Nat'l Cmty. Renaissance of California,* 766 F.3d 1191, 1198 (9th Cir. 2014) (explaining that because Section 1983 does not contain its own statute of limitations, federal courts apply the state's statute of limitations for personal injury actions).

[11] *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1126 n.7 (9th Cir. 2000).

[12] 28 U.S.C. § 1915(e)(2)(B).

Case No. 3:23-cv-00180-JMK, *Williams v. Constant, et al.*
Screening Order
Page 3 of 24

In conducting its screening review, a court must liberally construe a self-represented plaintiff's pleading and give the plaintiff the benefit of the doubt.[13] Before dismissing any portion of a complaint, a district court must provide a plaintiff with a statement of the deficiencies in the complaint and an opportunity to amend or otherwise address the problems, unless to do so would be futile.[14] Futility exists when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."[15]

## DISCUSSION

### I. Summary of Factual Allegations

Plaintiff claims that before an assembly meeting on August 10, 2021, he was reading aloud from his Bible and praying in front of a podium at the front of the line.[16] Plaintiff says was able to "excersic[e] his Christian duty of prayer" for "some time" before Assembly Member Constant told Plaintiff he needed to be seated.[17] Plaintiff admits he "did not sit down right away" because he believed his rights were being violated. Then, Assembly Member Constant told Plaintiff to leave. Instead

---

[13] *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)).

[14] *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (citing *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)).

[15] *See Schreiber Distributing Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986).

[16] Docket 1 at 5.

[17] *Id.*

of leaving, Plaintiff sat down and called the police.[18]  Then, he was asked to leave by Thomas Bruce, a private security officer employed by Securitas.[19]  Plaintiff believes an unnamed Securitas officer also called the police around this time.[20]  Plaintiff claims he was sitting quietly in a chair when three police officers arrived on scene.[21]  Plaintiff believes the officers were instructed to arrest him "no matter what."[22]  Plaintiff says he ultimately was arrested and charged with "disorderly conduct - loud noise public place AMC 8.30. I 20(A)(2) and trespass - enter or remain requested to leave AMC 8.45.01 0(A)(3)(a)"."[23]  Plaintiff claims he was told once the police arrive on the scene, "someone has to go, they either leave or they are arrested."[24]  It is unclear whether Plaintiff attempted to leave before he was arrested.  However, as he was being arrested, Plaintiff "continued to voice his displeasure" arguing the officers were violating his First Amendment Rights.[25]  After his arrest, he filed grievances against the police "via email, online complaints,

---

[18] *Id.* ("Plaintiff sat down and called Anchorage Police Department for assistance with vindicating his rights.").

[19] Docket 1 at 6.

[20] *Id.*

[21] *Id.*

[22] Docket 1 at 7.

[23] Docket 1 at 8.

[24] Docket 1 at 9.

[25] *Id.*

Case No. 3:23-cv-00180-JMK, *Williams v. Constant, et al.*
Screening Order
Page 5 of 24

written complaints, and telephone calls."[26]  Plaintiff claims his complaints were either ignored or there was no finding of wrongdoing.[27]

## II.  Requirements to State a Claim

To determine whether a complaint states a valid claim for relief, courts consider whether the complaint contains sufficient factual matter that, if accepted as true, "state[s] a claim to relief that is plausible on its face."[28]  Rule 8 of the Federal Rules of Civil Procedure instructs that a complaint must contain a "short and plain statement of the claim showing that the [complainant] is entitled to relief[.]"[29]  While a complaint need not, and should not, contain every factual detail, "unadorned, the defendant-unlawfully-harmed-me accusation[s]" are insufficient to state a claim.[30]  A plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant.[31]  A complaint is insufficiently plead if it offers "naked assertions devoid of further factual enhancement."[32]

---

[26] Docket 1 at 12.

[27] Docket 11–12.

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In making this determination, a court may consider "materials that are submitted with and attached to the Complaint."  *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (citing *Lee v. L.A.*, 250 F.3d 668, 688 (9th Cir. 2001)).

[29] Fed. R. Civ. P. 8(a)(2).

[30] *Id.*

[31] *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976).

[32] *Id.* (internal citations and quotations omitted).

During screening, a district court must accept as true the allegations of the complaint, construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor.[33]  However, a court is not required to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.[34]  Further, a court cannot act as counsel for a self-represented litigant, such as by supplying the essential elements of a claim.[35]  The Court nevertheless will highlight several deficiencies noted upon review and set forth some legal standards applicable to Section 1983 claims that the Court has identified in the current complaint.  However, it is Plaintiff's burden to set forth the legal and factual basis for each claim should Plaintiff elect to file an amended complaint.

### III.    Civil Rights Claims under 42 U.S.C. § 1983 ("Section 1983")

To state a claim for relief under Section 1983, a plaintiff must allege plausible facts that, if proven, would establish (1) the defendant acting under color of state law (2) deprived the plaintiff of rights secured by the federal Constitution or federal statutes.[36]  To act under color of state law, a complaint must allege that the

---

[33]*Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003) (a court must construe *pro se* pleadings liberally and afford the *pro se* litigant the benefit of any doubt).

[34] *Doe I v. Wal–Mart Stores, Inc.,* 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

[35] *Pliler v. Ford,* 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

[36] *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

Case No. 3:23-cv-00180-JMK, *Williams v. Constant, et al.*
Screening Order
Page 7 of 24

defendant acted with state authority as a state actor.[37]  A defendant in a civil rights lawsuit must be a "person."[38]  A person who acted under color of state law and caused a violation of federal rights may be sued in either an "individual" or "official" capacity.  A defendant sued in an individual capacity may be held liable for monetary damages.[39]  But a defendant sued in an official capacity may not be sued for damages, only for injunctive relief.[40]

To be deprived of a right, the defendant's action needs to either violate rights guaranteed by the Constitution or an enforceable right created by federal law.[41] Section 1983 does not confer constitutional or federal statutory rights.  Instead, it provides a mechanism for remedying violations of pre-existing federal rights.[42]  A plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, and the plaintiff must allege an affirmative link between the injury and the conduct of that defendant.[43]

---

[37] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

[38] 42 U.S.C. § 1983.

[39] *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016).

[40] *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 n.10 (1989).

[41] *Buckley v. City of Redding*, 66 F. 3d 188, 190 (9th Cir. 1995); *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997).

[42] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

[43] *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976).

Case No. 3:23-cv-00180-JMK, *Williams v. Constant, et al.*
Screening Order
Page 8 of 24

## A. Claims against the Anchorage Police Department

A municipal police department is not a "person" within the meaning of Section 1983. Therefore, the Anchorage Police Department is DISMISSED with prejudice. However, a municipality, such as the Municipality of Anchorage, is a "person" for purposes of Section 1983 and may be sued.[44] Additionally, a plaintiff may sue an individual officer in his official or individual capacity in accordance with the guidance explained further below.[45]

## B. Municipal liability

To state a claim against a municipality under Section 1983, a plaintiff must allege facts that, if proven, would establish that the plaintiff's constitutional rights were violated pursuant to a policy or custom of the municipality.[46] Thus, a municipality may not be sued under Section 1983 solely because an injury was inflicted by one of its employees, including its police officers.[47] Rather, a Section 1983 claim against a municipal defendant "cannot succeed as a matter of law" unless a plaintiff plausibly alleges facts that, if prove, would establish (1) that the municipal defendant maintains a policy or custom pertinent to the plaintiff's

---

[44] *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).

[45] *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002, 1006 (9th Cir.), *cert. denied sub nom. Cnty. of Sonoma, California v. Lemos, 143* S. Ct. 429 (2022). *But see Price v. Galiu,* 723 F. App'x 557 (9th Cir. 2018) (explaining the allegations in the complaint were "not sufficient to show that his excessive force claim is distinct from the incident that led to his conviction for resisting an officer").

[46] *Cortez v. County of Los Angeles,* 294 F.3d 1186, 1188 (9th Cir. 2001) (citing *Monell,* 436 U.S. at 690–91).

[47] *Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006).

alleged injury; and (2) explains how such policy or custom caused the plaintiff's injury.[48]  To allege a failure to train claim, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees.[49]

Plaintiff claims the "creation of policies that allow for members of the public to be censored by the mere say so of an Assembly member is just way too broad,"[50] but has not identified a specific policy or custom.  He also includes allegations that the Anchorage Police Department does not properly train or supervise its employees.[51]  However, as explained further below, Plaintiff has not shown an underlying constitutional violation as required to establish municipal liability.[52]  Therefore, Plaintiff has not stated a viable claim against the Municipality of Anchorage.

---

[48] *Sadoski v. Mosley,* 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of a municipal defendant pursuant to Fed. R. Civ. P. 12(b)(6)).

[49] *Benavidez*, 993 F.3d at 1153–54.

[50] Docket 1 at 13.

[51] Docket 1 at 11.

[52] *See Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

## C.     Claims against individual defendants

### 1.     *First Amendment claims*

The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech . . . ."[53]  This means that the "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."[54]  Citizens have the right to be free from governmental action taken to retaliate against the citizen's exercise of First Amendment rights or to deter the citizen from exercising those rights in the future.[55]  However, "[c]itizens are not entitled to exercise their First Amendment rights whenever and wherever they wish."[56]  Further, citizens do not have a "constitutional right to force the government to listen to their views . . . [a]nd the First Amendment does not compel the government to respond to speech directed toward it."[57]

Federal courts apply "forum analysis" when evaluating First Amendment claims relating to speech on government property.  Under this approach, a district court must "first determine whether the property [at issue] is a traditional public

---

[53] U.S. Const. amend. I.

[54] *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573, 122 S. Ct. 1700, 152 L. Ed. 2d 771 (2002).

[55] *Sloman v. Tadlock,* 21 F.3d 1462, 1469–70 (9th Cir. 1994).

[56] *Kindt v. Santa Monica Rent Control Bd.,* 67 F.3d 266, 269 (9th Cir. 1995); *see also Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. 788, 799–800 (1985) ("Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.").

[57] *L.F. v. Lake Washington School District #414*, 947 F.3d 621, 626 (9th Cir. 2020) (citations omitted).

forum, a designated public forum, or a nonpublic forum in order to ascertain what level of scrutiny to apply to restrictions on speech."[58]   When the government designates a limited public forum, as is the case of a city council or assembly meeting, it may apply restrictions to the time, place, and manner of speech.[59] Additionally, it may also regulate the content of speech - as long as content-based regulations are viewpoint neutral and enforced that way."[60]

Although citizens "have an enormous first amendment interest in directing speech about public issues to those who govern their city . . .," a meeting of a city council or assembly "is a governmental process with a governmental purpose."[61] Such meetings have "an agenda to be addressed and dealt with."[62][63]   A speaker may be excluded from a nonpublic forum if he wishes to address a topic not encompassed within the purpose of the forum,[64] or if he is not a member of the class of speakers for whose especial benefit the forum was created.[65]

---

[58] *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097–98 (9th Cir. 2003) (internal citations omitted).

[59] *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989).

[60] *Norse v. City of Santa Cruz,* 629 F.3d at 975. "[I]n dealing with agenda items, the Council does not violate the first amendment when it restricts public speakers to the subject at hand.").

[61] *White v. City of Norwalk,* 900 F.2d 1421, 1425 (9th Cir. 1990).

[62] *Id.*

[63] *Id.* at 1426.

[64] *See Lehman v. City of Shaker Heights,* 418 U.S. 298 (1974).  *See also Seattle Mideast Awareness Campaign v. King County,* 781 F.3d 489, 496 (9th Cir. 2015) ("In limited public forums, content-based restrictions are permissible, as long as they are reasonable and viewpoint neutral.") (citation omitted).

[65] *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37 (1983).

Furthermore, "the nature of a Council meeting means that a speaker can become 'disruptive' in ways that would not meet the test of actual breach of the peace . . . or 'fighting words' likely to provoke immediate combat."[66]  A speaker may disrupt a Council meeting by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies; the meeting is disrupted because the council or assembly is prevented from accomplishing its business in a reasonably efficient manner.  Indeed, such conduct may interfere with the rights of other speakers.

An ordinance that governs "the decorum of a city council meeting is not facially overbroad if it only permits a presiding officer to eject an attendee for actually disturbing or impeding a meeting."[67]  Moreover, "the point at which speech becomes unduly repetitious or largely irrelevant is not mathematically determinable," therefore "the role of a moderator involves a great deal of discretion."[68]  To state a First Amendment retaliation claim, a plaintiff must demonstrate:  (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.[69]  In the retaliatory arrest context, "it can be difficult to

---

[66] *White,* 900 F.2d at 1246–47 (citations omitted).

[67] *Acosta v. City of Costa Mesa,* 718 F.3d at 811 (quoting *Norse v. City of Santa Cruz,* 629 F.3d at 976) (quotations and brackets omitted).

[68] *White,* 900 F.2d at 1426.

[69] *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

discern whether an arrest was caused by the officer's legitimate or illegitimate consideration of speech."[70] However, government officials do not violate a plaintiff's First Amendment rights if they had an objectively legitimate need to implement security measures in response plaintiff's speech and would have implemented the same security measures in the absence of any retaliatory motive.[71] A plaintiff bears the initial burden of showing that the exercise of his First Amendment rights was a substantial or motivating factor behind the defendant's conduct.[72] "[M]ere speculation that defendants acted out of retaliation is not sufficient"[73] and "[m]ere removal from a governing body's meeting is not an arrest that can support a false arrest claim."[74] Rather, a plaintiff "must generally 'plead and prove the absence of probable cause,' because the presence of probable

---

[70] *Lozman v. City of Riviera Beach, Fla.,* 585 U.S. 87, 98 (2018) (citing *Reichle v. Howards,* 566 U.S. 658, 666 (2012)).

[71] *Nieves*, 139 S. Ct. at 1724. *See also Hunt v. City of Los Angeles,* Case No. CV 17-8064 JFW (PVC), 2021 WL 768248, at *14 (C.D. Cal. 2021), *report and recommendation adopted,* 2021 WL 765418 (C.D. Cal. 2021), *aff'd,* Case No. 21-55310, 2022 WL 3714490 (9th Cir. 2022).

[72] *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977).

[73] *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014).

[74] *Warden v. Walkup,* Case No. CV-13-00283-TUC-DCB, 2020 WL 1694752, at *5 (D. Ariz. 2020) (citations omitted). *See also United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994) (plaintiff was asked to leave, therefore, plaintiff was free to terminate the encounter at any time and leave; as a matter of law, there was no seizure because plaintiff could terminate encounter anytime at his choosing). *Compare United States v. Washington,* 490 F.3d 765, 772 (9th Cir. 2007) (seizure because a person in plaintiff's shoes would not have felt at liberty to terminate the encounter with the police and leave), with *City of Madison Joint Sch. Dist. v. Wis. Employment Relations Comm'n*, 429 U.S. 167, 175 n.8 (1976) (finding restrictions placed on the plaintiff were necessary to stop his "repetitive and truculent" behavior constituted constitutional time, place, and manner regulation).

Case 3:23-cv-00180-JMK   Document 5   Filed 05/07/24   Page 14 of 24

cause generally 'speaks to the objective reasonableness of an arrest' and suggests that the 'officer's animus' is not what caused the arrest."[75]

In this case, Plaintiff was able to "excersic[e] his Christian duty of prayer" by reading aloud from his Bible for "some time" before the assembly meeting was scheduled to begin. By Plaintiff's own account, he was asked to be seated and given multiple opportunities to leave before he was ultimately arrested for trespassing and disorderly conduct. Therefore, even liberally construing Plaintiff's version of events, his speech appears to have been restricted due to the timing and manner of his communication, not because of his viewpoints or the content of his speech. Further, it appears Plaintiff was not arrested until he became disruptive after being asked to leave.[76] Therefore, Plaintiff has not shown a substantial causal relationship between any protected speech right and his removal from the meeting. For these reasons, Plaintiff has not stated a plausible First Amendment claim. Although amendment is likely futile, Plaintiff is accorded leave to amend this claim.

---

[75] *Ballentine v. Tucker*, 28 F.4th 54, 62 (9th Cir. 2022) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1723–24 (2019)).

[76] *Dehne v. City of Reno,* 222 F. App'x 560, 561–62 (9th Cir. 2007) ("removing an individual from a public meeting does not violate the Constitution provided that the individual is sufficiently disruptive and is not removed because of his or her views."). *See also Kindt v. Santa Monica Rent Control Bd.,* 67 F.3d 266, 272 (9th Cir. 1995) (removal of speaker permissible where speaker was disrupting the proceedings by yelling and trying to speak when it was not time for call to the audience); *White,* 900 F.2d at 1426 ("a speaker may disrupt a Council meeting by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies. The meeting is disrupted because the Council is prevented from accomplishing its business in a reasonably efficient manner. Indeed, such conduct may interfere with the rights of other speakers.").

## 2. Unreasonable Search and Seizure

The Fourth Amendment protects the "[t]he right of . . . people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[77] "A seizure results in a constitutional violation only if it is unreasonable."[78] A claim for unlawful arrest may be cognizable under Section 1983 as a violation of the Fourth Amendment, "provided the arrest was without probable cause or other justification."[79] Under the Fourth Amendment, if the arresting officers had probable cause to arrest, the officers' other subjective motivations for the arrest are immaterial.[80] To plead a claim for false arrest and imprisonment in violation of the Fourth Amendment, Plaintiff must allege facts demonstrating an absence of probable cause.[81] Probable cause exists where the "available facts suggest a fair probability that the suspect has committed a crime."[82] When assessing probable cause, courts must consider the totality of the circumstances known to the officers at the time and the events leading up to the arrest, and then decide whether these facts viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.[83] "Because

---

[77] U.S. Const. amend. IV.

[78] *Nelson v. City of Davis,* 685 F.3d 867, 878 (9th Cir. 2012).

[79] *Dubner v. City and Cnty. of San Francisco,* 266 F.3d 959, 964 (9th Cir. 2001).

[80] *Whren v. United States,* 517 U.S. 806, 813–15 (1996).

[81] *See Beck v. City of Upland,* 527 F.3d 853, 864–66 (9th Cir. 2008).

[82] *Tatum v. City & Cnty. of San Francisco,* 441 F.3d 1090, 1094 (9th Cir. 2006).

[83] *Id.*

probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar."[84] Regardless of whether the officer had probable cause, an officer may nevertheless be shielded by qualified immunity if it was objectively reasonable for the officer to believe he had probable cause to make the arrest.[85]

Plaintiff's extensive narrative includes his opinions, beliefs, alleged observations, and arguments about his rights. He claims multiple people discouraged his arrest and advocated for him.[86] However, Plaintiff has not established the police lacked probable cause to arrest him for trespass and disorderly conduct. Further, the Complaint suggests Plaintiff's Bible was appropriately seized incident to arrest and later returned to him.[87] Therefore, Plaintiff has failed to state a plausible claim for unreasonable seizure of his person or his property under the Fourth Amendment. Although amendment likely is futile, the Court grants Plaintiff leave to amend this claim in accordance with the guidance herein.

---

[84] *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotations and citations omitted).

[85] *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011).

[86] *See, e.g.,* Docket 10 (claiming "Jamie Allard, current state legislator, then Assembly member for Anchorage state" said, "Nial did nothing wrong and you need to let him go.").

[87] Docket 1 at 10.

### 3. Excessive force

A plaintiff may file an excessive force claim against a police officer or officers, so long as a successful civil rights action would not necessarily imply the invalidity of a criminal conviction.[88]  Claims of excessive force in the context of an arrest are analyzed under the Fourth Amendment "reasonableness" standard.[89]  In assessing the objective reasonableness of a particular use of force, a district court considers:  (1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted; (2) the government's interest in the use of force; and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion.[90]

Plaintiff's conclusory excessive force allegations are insufficient to state a claim.[91]  Plaintiff alleges an officer grabbed his right wrist,[92] put physical restraints (presumably handcuffs) on his hands, and put him in the back of the police car.[93]

---

[88] *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002, 1006 (9th Cir.), *cert. denied sub nom. Cnty. of Sonoma, California v. Lemos,* 143 S. Ct. 429 (2022). *But see Price v. Galiu,* 723 F. App'x 557 (9th Cir. 2018) (explaining the allegations in the complaint were "not sufficient to show that his excessive force claim is distinct from the incident that led to his conviction for resisting an officer.").

[89] *Graham v. Connor*, 490 U.S. 386, 394–95 (1989).

[90] *Lowry v. City of San Diego,* 858 F.3d at 1256 (citation omitted).

[91] *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 686 (2009) (a plaintiff must allege more than an "unadorned, the-defendant-unlawfully-harmed me accusation"; a pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do") (citations and quotations omitted); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Smith v. Napa State Hosp.,* 2016 WL 6892137, at *6 (C.D. Cal. 2016) (conclusory excessive force allegations insufficient).

[92] Docket 1 at 9.

[93] Docket 1 at 10.

He has not described an injury or adequately plead facts that suggested the officers used an unreasonable amount of force under the circumstances. Therefore, Plaintiff has not stated a viable claim of excessive force under the Fourth Amendment. However, Plaintiff is granted leave to amend this claim.

### 4. Miscellaneous claims

Plaintiff also alleges malicious prosecution,[94] calls his arrest a "false arrest" and "kidnapping,"[95] and claims he was not read his *Miranda* rights.[96] Additionally, he claims Anchorage Assembly Member Suzanne LaFrance violated his right to a "speedy and fair trial" when she "disparaged" him by discussing the above event at an assembly meeting, which was broadcast on the local news and on several websites.[97] Plaintiff claims his manager saw him on the news and fired him because they "'[d]idn't need the headache' of having a political activist or someone who got in trouble on their staff."[98] After the incident, he struggled to find a job because of the information available on Alaska Courtview.[99] Finally, Plaintiff claims the "jury pool was also tainted by the malicious statements" of Assembly Member LaFrance.[100]

---

[94] Docket 1 at 8.

[95] Docket 1 at 9.

[96] Docket 1 at 10.

[97] Docket 1 at 13.

[98] Docket 1 at 14.

[99] *Id.*

[100] *Id.*

These confusing and conclusory allegations are insufficient under Rule 8. Further, to the extent the Court can decipher his claims, they either are not appropriately raised in a civil rights action, misused terms, or appear frivolous.[101] For example, kidnapping is a criminal offense. "Criminal proceedings, unlike private civil proceedings, are public acts initiated and controlled by the Executive Branch."[102] Characterizing an incident a "kidnapping" does not establish any private right of action and cannot support a civil lawsuit.[103] Similarly, claims regarding *Miranda*, speedy trial, etc., should be raised in state criminal proceedings, on direct appeal of a state criminal conviction, or in post-conviction relief proceedings.[104] Even if Plaintiff was not charged or convicted of trespassing and disorderly conduct, Plaintiff has not plead facts to support a claim for a violation of his speedy trial rights or for malicious prosecution under federal or state law.[105] Further, tort claims ground in state law, such as defamation, typically are

---

[101] *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (a claim is legally frivolous when it lacks an arguable basis either in law or in fact).

[102] *Clinton v. Jones*, 520 U.S. 681, 718 (1997).

[103] *See Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980) (criminal provisions provide no basis for civil liability).

[104] As indicated above, Plaintiff has not provided sufficient facts regarding his arrest and any state criminal proceedings in this case. Plaintiff says the "charges were dropped," yet he claims his speedy trial rights were violated and the jury pool was "tainted." Docket 1 at 14.

[105] In order to prevail on a Fourth Amendment malicious prosecution claim, a plaintiff "'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" *Awabdy*, 368 F.3d at 1066. *See also Lassiter v. City of Bremerton,* 556 F.3d 1049, 1054–55 (9th Cir. 2009) ("probable cause is an absolute defense to malicious prosecution."). *See also* Alaska Stat. § 09.50.250.

addressed in Alaska state court, unless a federal court establishes supplemental jurisdiction over a plaintiff's state claims.[106]

Plaintiff also includes information and complaints about several individuals not named as defendants.[107]   To state a claim, a plaintiff must specify which specific defendant(s) plaintiff alleges are responsible for each violation of plaintiff's constitutional rights and *the factual basis* for each violation.[108]   In any amended complaint, Plaintiff must identify (1) the specific injury that the plaintiff is alleging has occurred, (2) when that injury occurred, (3) where that injury was caused, and (4) who the plaintiff is alleging caused that specific injury.   Finally, the Court is unaware of any legal basis providing a federal court with the authority to grant some of the requested relief, such as an order to establish a citizen review board[109] with subpoena power,[110] or to order local news channels—who are not named as defendants—to air advertisements.[111]   Plaintiff cites no legal basis for these requests for relief, and the Court is aware of none.

---

[106] *See* 28 U.S.C. § 1367.  Plaintiff does not name his former employer as a defendant, but to the extent he seeks to allege wrongful termination, this too is a common law tort more appropriately brought in a separate state court action.

[107] *See, e.g.,* Docket 1 at 7–8 (listing ten police officers he claims had been following his "every movement" and harassing him).

[108] *See Austin v. Terhune,* 367 F.3d 1167, 1171 (9th Cir. 2004).

[109] A civilian review board is an entity external to a police department's internal affairs office, and consists of citizens from outside the department, appointed by the mayor or other senior government officials.

[110] *See* Fed. R. Civ. P. 45.

[111] *Zenith Radio Corp. v. Hazeltine Rsch., Inc.,* 395 U.S. 100, 112 (1969) (a federal court cannot issue relief against someone who is not a party to the action).

Case 3:23-cv-00180-JMK   Document 5   Filed 05/07/24   Page 21 of 24

**CONCLUSION**

Plaintiff is accorded **60 days** from the date of this order to file an amended complaint. An amended complaint replaces the prior complaint in its entirety.[112] Any claim not included in the amended complaint will be considered waived. However, an amended complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[113] An amended complaint need not contain legal research or analysis, but it must contain sufficient facts that state a plausible claim for relief. A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Although Plaintiff has been given the opportunity to file an amended complaint, he shall not unjustifiably expand the scope of the case by alleging new unrelated claims.[114] An amended complaint may not include any claims or defendants for which Plaintiff lacks a sufficient legal or factual basis. An amended complaint must only include "simple, concise, and direct" allegations and set out each claim for relief separately.

**IT IS THEREFORE ORDERED:**

1.     Plaintiff's Complaint at **Docket 1 is DISMISSED** for failing to state a to state a claim upon which relief could be granted. The Court grants Plaintiff leave

---

[112] *See* Fed. R. Civ. P. 15; Local Civil Rule 15.1.

[113] Fed. R. Civ. P. 8(a)(2).

[114] *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

to file an amended complaint in accordance with the guidance provided in this order.

2.      The Anchorage Police Department is **DISMISSED with prejudice.** Any amended complaint may not include claims the Anchorage Police Department for the reasons explained above.

3.      Plaintiff is accorded **60 days** from the date of this order to file **one of the following:**

      a.      <u>First Amended Complaint</u>, in which Plaintiff restates the claims to address the deficiencies identified in this order. An amended complaint should be on the Court's form, which is being provided to Plaintiff with this order; or

      b.      <u>Notice of Voluntary Dismissal</u>, in which Plaintiff elects to close and end the case.

4.      If Plaintiff does not file either an Amended Complaint or Notice of Voluntary Dismissal**,** this case may be dismissed under 28 U.S.C. § 1915(e)(2)(B) without further notice to Plaintiff.

5.      Plaintiff's application to waive payment of the filing fee at **Docket 3 is GRANTED.**

6.      Self-represented litigants are expected to review and comply with the Federal Rules of Civil Procedure, the Local Civil Rules, and all Court orders.[115]

---

[115] Federal Rules of Civil Procedure: https://www.uscourts.gov/rules-policies/current-rules-practice-procedure/federal-rules-civil-procedure; Court's Local Rules: https://www.akd.uscourts.gov/court-info/local-rules-and-orders/local-rules.

Failure to do so may result in the imposition of sanctions authorized by law, including dismissal of the action.

7.      Self-represented litigants must be ready to diligently pursue each case to completion.  Missing a deadline or otherwise failing to pursue a case may result in the dismissal of the action.

8.      At all times, all parties shall keep the Court informed of any change of address or phone number.  Such notice shall be titled "Notice of Change of Address."  The Notice shall contain only information about the change of address, and its effective date.[116]  The Notice shall not include requests for any other relief. A Notice of Change of Address form, PS23, may be obtained from the Clerk of Court, if needed.  If a plaintiff fails to keep a current address on file with the Court, that may result in a dismissal of the case without further notice to Plaintiff.

9.      With this order, the Clerk is directed to send:  (1) form PS01, with "FIRST AMENDED" written above the title "Complaint Under the Civil Rights Act 42 U.S.C. § 1983"; (2) form PS09, Notice of Voluntary Dismissal; and (3) form PS23, Notice of Change of Address.

DATED this 7th day of May, 2024, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
UNITED STATES DISTRICT JUDGE

---

[116] *See* Local Civil Rule 11.1(b) (requiring a notice of change of address to be filed, as "[s]elf-represented parties must keep the court and other parties advised of the party's current address and telephone number.").